IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT EUGENE MERIDETH,  )
                         )
         Petitioner,     )   Civil No. 04-762-TC
                         )
    v.                   )   FINDINGS AND
                         )   RECOMMENDATION
BRIAN BELLEQUE,          )
                         )
         Respondent.     )
_____)

COFFIN, Magistrate Judge.

Before the court is petitioner's Petition for Writ of Habeas Corpus (#2). For the reasons that follow, petitioner's claims should be denied and the case dismissed.

BACKGROUND

In this habeas action, petitioner challenges his convictions for aggravated murder by arson and related charges. The record discloses the following facts leading up to the convictions.[1] Petitioner lived in a duplex unit with his then-girlfriend, Allyson Givens, and another woman, Leona Brewer. After tensions developed between petitioner and Brewer, Brewer moved some of her property upstairs into the other duplex unit, where Majorie Wooldridge lived with her two children. Within about a month, Givens and petitioner were evicted.

---

[1] The facts are drawn in large part from Respondent's Exhibit 113, 2-5.

Approximately two weeks later, petitioner, Givens, and others were picnicking. Petitioner had been drinking excessive amounts of alcohol. He asked Givens to drive him to the duplex in order to retrieve a pan from the unit where they had resided. He went into the duplex for 10 or 15 minutes, and when he returned to the car, he told Givens, "Do you want to see what a match can do?" Tr. 136. He drove away with the lights off, and Givens looked back to see a glow coming from the bottom floor of the duplex. Petitioner then told a friend, "my house is on fire." Petitioner was arrested at 1:00 a.m. on the night of the picnic for driving under the influence of intoxicants. Wooldridge and her two children died in the fire.

Fire investigators initially concluded that the fire was caused by faulty wiring and started in the attic. Tr. 42-43. Months later, after Givens reported to the police that petitioner started the fire, authorities determined that the fire was instead caused by arson and originated in a first-floor hall closet. Petitioner was indicted for aggravated murder and related charges. At trial, the prosecution presented the theory that the fire originated on the first floor and was deliberately caused, whereas the defense argued that the fire was electrical in origin and accidental.

The defense called three experts who testified concerning the fire's cause. James Smith, an ATF agent who had investigated more than 500 fires, visited the fire scene five times. He testified that the fire originated in the attic and was likely caused by poor wiring. Smith further testified that the fire dropped into a second-floor

2 - FINDINGS AND RECOMMENDATION

closet, vented back up, and burned downward. Tr. 1161-66, 1174, 1220, 1222. Smith refuted the theory that the fire started in the first-floor closet by positing that, under such a theory, the fire would have burned the bottom of a closet door on that floor. A piece of material that Smith had identified as the bottom of the closet had not been burned. Tr. 1224. Smith used that piece of evidence - along with other physical evidence, including wiring evidence - to substantiate his theory. Tr. 1333.

A second defense expert, electrical consultant Robert Dickson, testified concerning attic wiring and opined that an electrical "arc" relevant to the fire's cause occurred in the attic. Tr. 1131-32. The third defense expert, fire investigator Walker Wysocki, opined that the fire started in the second floor, in the area that had incurred the most extensive fire damage, and he concluded that the fire was electrical in origin. Tr. 1367-74, 1386-88.

The prosecution cross-examined Smith based on evidence that the unburned door fragment could not have come from the first-floor closet. The prosecutor had independently determined that the fragment could not have fit within the first-floor closet doorjamb that Smith had assumed framed the door fragment. Smith and petitioner's trial counsel admitted the mistake to the jury, and the prosecution characterized Smith's theory as flawed in his closing argument. Tr. 1469-72, Tr. 1514-15, 1517-18. Petitioner was found guilty on all counts. Tr. 1541-42.

3 - FINDINGS AND RECOMMENDATION

Petitioner appealed the judgment of conviction, and the Oregon Court of Appeals affirmed. State v. Merideth, 942 P.2d 803 (Or. App.), rev. denied, 944 P2d 948 (Or. 1997). Petitioner's claim for post-conviction relief was denied after a hearing. Resp. Ex. 124. The decision of the post-conviction court was affirmed without an opinion by the Oregon Court of Appeals, and the Oregon Supreme Court denied petitioner's petition for review. Resp. Ex. 127-28.

Petitioner now files for a writ of habeas corpus in federal court, asserting that the advocacy of his trial counsel fell below constitutional standards for effectiveness because his attorney (1) failed to prevent Smith's erroneous testimony concerning the provenance of unburned closet door fragment, and (2) failed to object to testimony concerning petitioner's prior misconduct and petitioner's silence in the face of news that his former residence was on fire. For the reasons that follow, petitioner's claim should be denied and the case dismissed.

## ANALYSIS

### Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant habeas relief regarding any claim "adjudicated on the merits" in a state court unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Supreme Court has explained that a state court decision is "contrary to" federal law under the AEDPA

4 - FINDINGS AND RECOMMENDATION

if it either fails to apply the correct Supreme Court authority or applies the correct controlling authority to a case involving "materially indistinguishable" facts but reaches a different result. Williams v. Taylor, 529 U.S. 362, 405-07, 413 (2000). Similarly, a state court decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citations omitted).

"In Williams and in subsequent decisions the Supreme Court has repeatedly emphasized that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting Williams, 529 U.S. at 410). Thus, "[t]he petitioner must demonstrate not only that the state court's application of governing federal law was erroneous, but also that it was objectively unreasonable." Ramirez v. Castro, 365 F.3d 755, 762 (2004) (citing Andrade, 538 U.S. at 75); see also Penry v. Johnson, 532 U.S. 782, 793 (2001); Clark, 331 F.3d at 1068-69 (discussing Andrade and the appropriate standard of review).

In ineffective assistance of counsel cases, the federal law in question is the Strickland standard, which states that a defendant alleging a Sixth Amendment violation must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Thus, the task of the habeas court is to consider whether the post-conviction court implemented

5 - FINDINGS AND RECOMMENDATION

an unreasonable application of <u>Strickland</u> when it determined that petitioner was not denied effective assistance of counsel.

Petitioner bears the burden of proving, by a preponderance of the evidence, the underlying facts supporting the ineffective assistance of counsel claim. <u>See</u> Or. Rev. Stat. § 138.620(2). Moreover, 28 U.S.C. section 2254(d) creates a presumption that state court findings of fact, after a hearing on the merits, are correct.

<u>Application to Petitioner's Claims</u>

(1) Failure to adequately prepare expert witness testimony

Petitioner contends that the post-conviction court erred in determining that his trial counsel provided constitutionally adequate representation despite failing to prevent the defense expert from testifying erroneously concerning the provenance of the unburned door fragment. In particular, petitioner asserts that his defense counsel should have discovered that the door fragment did not originate from the place where Smith assumed it had, allowing defense counsel to prevent Smith from testifying that the fragment supported his theory that the fire originated from an electrical source.

Petitioner presented a substantially similar argument to the post-conviction court. After careful consideration, the post-conviction court made a number of findings concerning this claim and concluded that the advocacy of petitioner's trial counsel did not fall short of the objective reasonableness standard set forth in the first

6 - FINDINGS AND RECOMMENDATION

Strickland prong.[2] 446 U.S. at 687-88. The post-conviction court found that the expert had strong credentials in his field, his law-enforcement background enhanced his credibility, that trial counsel spent many hours preparing him, and the defense examination was thorough and articulate. Resp. Ex. 123, 6. The post-conviction court further observed that "the particular piece of evidence and Mr. Smith's conclusions therefrom were not critical to his overall analysis of the fire as being electrical as opposed to arson in origin." Resp. Ex. 122, 2. In arriving at its final determination, the post-conviction court relied on the legal conclusion that the expert's incompetence could not be imputed to petitioner's trial counsel. Ex. 123, 7.

Before this court, petitioner argues that the post-conviction court erred because an attorney practicing with reasonable diligence would have investigated the location of the door fragment because it was a component of Smith's theory that the fire was electrical in origin. Petitioner argues that the prosecutor's ability to trace the location of the door fragment and use the expert's mistake for impeachment purposes points to defense counsel's own failure to

---

[2] Petitioner seems to argue that the post-conviction court's remark that petitioner was "prejudiced" by Smith's mistake indicates that the post-conviction court engaged in the second prong of the Strickland test (i.e., whether, but for trial counsel's decision not to object, there is a reasonable probability that the outcome would have been different). Because the post-conviction court concluded that the advocacy of petitioner's trial counsel was not objectively unreasonable, and that finding was not erroneous, the second Strickland prong is not triggered.

7 - FINDINGS AND RECOMMENDATION

adequately understand the nature and location of the physical evidence relevant to the defense theory.

As a general matter, trial counsel is entitled to rely on the opinion of an expert witness where there is no reason to doubt the witness's competence. <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1038-39 (9th Cir. 1995), cert. denied, 517 U.S. 1111 (1996). Here, it is clear that Smith's professional background and expertise left no cause to doubt his competency.

The parties nevertheless dispute whether trial counsel's duty of diligence includes double-checking the significance physical evidence that the expert inspected and employed in order to illustrate his theory concerning the source of the fire. In petitioner's view, minimal adequacy required his attorney to verify the expert's understanding of the provenance of the door fragment, one of many pieces of evidence used to illustrate his theory. The unspoken corollary is that a competent attorney was minimally required to confirm the role and provenance of each and every piece of evidence underlying Smith's testimony; petitioner does not explain how trial counsel would have discovered the error otherwise.

Respondent argues that ascribing such a duty to trial counsel, who had properly enlisted the expertise of a qualified specialist to examine the evidence and arrive at a conclusion, would require any attorney who adduces expert testimony to assume the role of the expert, thereby weakening the attorney's ability to rely on the expert's work.

8 - FINDINGS AND RECOMMENDATION

Petitioner cites no authority to support the position that adequate representation includes independently scrutinizing each component of an expert's opinion. Indeed, the cases that petitioner cites seem to indicate that an attorney may delegate the function of analyzing evidence that forms the basis of the opinion without committing an unprofessional error. See, e.g., id. at 1038-39 ("An integral part of an expert's specialized skill at analyzing information is an understanding of what information is relevant to reaching a conclusion. Experts are valuable to an attorney's investigation, then, not only because they have special abilities to process the information gathered by the attorney, but because they also are able to guide the attorney's efforts toward collecting relevant evidence. . . . If an attorney has the burden of reviewing the trustworthiness of a qualified expert's conclusion before the attorney is entitled to make decisions based on that conclusion, the role of the expert becomes superfluous.").

In this case, trial counsel demonstrated diligence by spending a great deal of time with Smith in advance of the trial, making approximately 20 visits, including four on-site meetings at the burned duplex. Resp. Ex. 121, 33, 35; Resp. Ex. 125, 36-37. Smith's theory of an electrical origin for the fire was one shared initially by police investigators and supported by a constellation of data, including information concerning severity of burn damage on the upper floor and wiring patterns.

The prosecutor did not attack Smith's training or qualifications, considerations that might call into question an attorney's

9 - FINDINGS AND RECOMMENDATION

professional judgment in delegating analysis to a particular expert. See Harris v. Vasquez, 949 F2d 1497, 1525 (9th Cir. 1990), cert. denied, 503 US 910 (1992) (competent assistance includes proper selection of experts). Nor did the prosecutor attack a fundamental premise concerning Smith's general theory. Rather, the prosecutor seized upon a single detail that was not central to the electrical fire theory - the erroneous provenance of the unburned door fragment - as an opportunity to impeach Smith more generally. The skillful impeachment diluted the weight of Smith's expert opinion. As the post-conviction court explained:

> In reviewing the transcript . . . the particular piece of evidence and Mr. Smith's conclusions therefrom were not critical to his overall analysis of the fire as being electrical as opposed to arson in origin. It is clear, however, that the additional piece of evidence (the door) and Mr. Smith's reliance thereon, formed the basis for impeachment of Mr. Smith's entire opinion and testimony. The prosecutor's cross examination of Mr. Smith is exceedingly skillful and displays knowledge of fire burns and origins that is exceptional. Mr. Smith's opinion about the origin of the fire being electrical was not dependant upon the door, his inclusion of the door as a basis for his opinion subjected him to harsh cross examination and a scathing closing argument. . . .
>
> . . . .
>
> Trials rarely go perfectly for any trial attorney. The goal of the trial attorney is to minimize the flaws and maximize the assets. Witnesses rarely testify exactly in accordance with their pretrial statements. Every trial attorney of any experience has, at times, either benefitted or been hurt by the metamorphosis of the evidence from pretrial preparation to presentation. Petitioner's trial must have been a dream come true for the prosecution and a nightmare for the defense. That is not the standard for post conviction, however. The court cannot attribute Mr. Smith's incompetence to trial counsel absent proof that trial counsel, himself, was inadequate.

10 - FINDINGS AND RECOMMENDATION

Resp. Ex. 122, 2-3. Petitioner has not cited, nor has this court's research revealed, case law indicating that objective, reasonable performance of trial counsel's advocacy includes confirming the provenance of each piece of physical evidence employed by an expert whose qualifications would have reasonably warranted the attorney's reliance on his or her expertise.

The post-conviction court's analysis did not amount to an unreasonable application of the <u>Strickland</u> standard; rather, the court was informed by applicable law and conducted a thoroughgoing analysis.[3] In sum, the post-conviction court did not err in determining that trial counsel's performance was not constitutionally inadequate.[4]

(2) Failure to object to testimony concerning petitioner's other misconduct, threats, and lack of remorse.

---

[3] Petitioner asserts that the post-conviction court erred by misstating the standard required for petitioner to prove his ineffective assistance claims. Petitioner argues that the post-conviction court employed a "preponderance of the evidence" standard, rather than the prejudice standard at issue in the second <u>Strickland</u> prong. Petitioner's argument is unavailing. The preponderance of the evidence standard measures the burden of proof under which petitioner is required to demonstrate the reasonable probability that the outcome would have differed. <u>Hensley v. Crist</u>, 67 F.3d 181, 186 (9th Cir. 1995). Moreover, with respect to the expert testimony claim, the post-conviction court's analysis resided in the first prong of the <u>Strickland</u> test, i.e., whether trial counsel's advocacy met the standard of objective reasonableness; thus, the prejudice prong was not triggered.

[4] Petitioner also requested an evidentiary hearing on this claim if the court "harbor[s] reservations concerning the historical facts" at issue. Resp. Brief, 22. Because the record is well developed on this matter, an evidentiary hearing is not required, and petitioner's request is denied.

11 - FINDINGS AND RECOMMENDATION

Petitioner contends that the post-conviction court erred in determining that his defense counsel provided constitutionally adequate representation despite failing to object to testimony that petitioner sold drugs; threw knives at Givens and threatened her; assaulted Brewer and took her drugs, threatened to cut the throat of Brewer's dog; and, failed to show remorse when he heard about the fire. In petitioner's view, the evidence concerning the threats and drug transaction was unduly prejudicial and therefore inadmissible under Or. Evid. R. 403 and 404. He further argues that the evidence related to petitioner's lack of reaction when hearing about the fire was irrelevant to the accusations against him.

Concerning the knife-throwing and threats against Givens, the post-conviction court determined that petitioner's trial counsel appropriately addressed the evidence by undermining the credibility of the Givens, who had complained about that behavior. Specifically, trial counsel demonstrated that Givens wrote to petitioner, declaring her "undying love for him," despite her reported fears about his behavior. Resp. Ex. 122, 8. Petitioner does not offer any explanation concerning why this and other evidence of threats was more prejudicial than probative. The post-conviction court did not err in determining that trial counsel's failure to object to the evidence describing petitioner's conduct toward Givens constituted ineffective assistance.

Concerning petitioner's failure to react to the news concerning the burning of his house, the record does not permit the conclusion that his trial counsel's failure to object fell below the objective

12 - FINDINGS AND RECOMMENDATION

standard of reasonableness.[5] Petitioner's theory of the case before the trial court was innocence; he argued that he did not commit the arson. A decision not to object to a report of petitioner's silence is not inconsistent with that theory. Further, petitioner has not developed an argument concerning how the evidence was irrelevant; that is, how it failed to make more or less likely the contention that he was responsible for the arson.

Even if trial counsel's representation was unreasonably deficient in that respect, there is no basis to conclude that, but for trial counsel's decision not to object, there is a reasonable probability that the outcome would have been different. The jury was presented with strong evidence concerning petitioner's guilt, including his placement at the scene of the fire and departure with headlights turned off and his admission to Givens. In sum, petitioner's ineffectiveness claim based on this specification should fail.

Regarding petitioner's drug transaction and threats against Brewer, petitioner does not explain why this evidence was inadmissible under Or. Evid. R. 404. As respondent argues, it may have been admissible for a noncharacter purpose (such as to support the state's theory that petitioner's motive to set fire to the duplex was to

---

[5] Petitioner urges the court to conduct <u>de novo</u> review of the remaining specifications of ineffective assistance because the post-conviction court did not "explicitly address" them. After reciting its finding on the Givens threat evidence, the post-conviction court explained that "[p]etitioner failed to adduce credible evidence in support of his other claims for post-conviction relief." Resp. Ex. 122, 9. Whether or not this court's review is conducted <u>de novo</u>, petitioner is not entitled to relief on the basis that his trial counsel failed to object to particular evidence.

13 - FINDINGS AND RECOMMENDATION

destroy Brewer's items that were stored there, and that his hostility towards her stemmed from a drug deal, see Tr. 1477-79). This undeveloped argument does not permit the court to conclude that petitioner's trial counsel's failure to object (or decision not to object) fell below the objective standard of reasonableness. Again, even if it did, the record does not permit the conclusion that, but for trial counsel's decision not to object, there is a reasonable probability that the outcome would have differed.

In sum, petitioner's ineffective assistance claim based on failure to object to testimony concerning petitioner's other misconduct, threats, and lack of remorse should be denied.

CONCLUSION

Petitioner's Petition for Writ of Habeas Corpus (#2) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to <u>de novo</u> consideration of the factual issue and will constitute a waiver of

14 - FINDINGS AND RECOMMENDATION

a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this \_\_6\_\_ day of June, 2008.

_____
THOMAS M. COFFIN
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION